Judge Leviter, may it please the court. My name is Steve Salzberg and along with Eric Bernstein, who's divided time with me, we're here to represent IMEGA in this challenge to the Unlawful Internet Gambling Enforcement Act of 2006. Can I just ask a factual question which has maybe a little bit to do with this case but isn't part of the issues before us. What's the status of H.R. 2267 right now, the bill that's pending in the House of Representatives that may do away with this particular act if it were enacted? It's a bill that Congressman Frank has been pushing hard. He's made speeches that suggest that he believes his support for the 2006 statute was a mistake. It's a little hard right now to assess what will happen between now and the end of Congress with the President's agenda taking precedence, including some, most courts aware, some very large issues. And whether this issue will get addressed is, I think, anyone's guess. It's still before House Committee, is that correct? I believe so. Okay. I would like to just say that there are three law students from George Washington University that have come to the Court of Appeals. It's their first time ever in the Court of Appeals. I just wanted to mention their names, Jonathan Gillen, Ophir Stemmer, and Alex, Alice Shen. Well, I also want to mention that we all have interns who are law students in our chambers who are here, too. So we're not going to mention their names. Well, thank you. Let's go on with the argument, Mr. Saulson. I'm still glad to have them. Yes. Thank you. We're happy to have everybody. It's nice sometimes to hear arguments before a non-empty courtroom. My argument, my portion of the argument addresses our challenge to the statute on the grounds of vagueness. And there are two sections of the statute that are particularly important for this part of the argument. They are 5362, Section 10A. That section is the section that defines unlawful Internet gambling. Don't you have to, in order to win on vagueness, Mr. Salzberg, don't you have to show, as the defense, that the statute would be impermissibly vague in every application, all its applications? I believe that the complaint in this case alleges, insofar as the challenge by our members is that they, to the extent they operate gaming facilities, they operate them all in jurisdictions where it is lawful to do so. And I believe that the statute is impermissibly vague as applied to all business entities that operate in jurisdictions in which it is lawful for them to accept that. Why is it vague? Hold on just a second. That's not a, I don't think you answered my question, so I'd like to get an answer to it. It doesn't, don't, do you agree or disagree as a matter of law with the assertion of your opponents on page 9 of their answering brief, that in order for a statute to be void for vagueness, it has to be impermissibly vague in all its applications? That you couldn't sit down and think of a single circumstance where it could be applied and it would clear, and you could say, yeah, that works. I believe that there is dictum, and only dictum in Supreme Court cases that says that. And that the actual holdings of the Supreme Court indicate where a statute is so void, so vague, excuse me, that reasonable people have to guess as to what its applicability is, that it is void for vagueness. But aren't you really conflating vagueness with the practical difficulties of compliance? Not really, and perhaps I can give you an example that will specifically respond to that question. This is not simply a challenge that says it's very hard to decide what state law is. It's very different. And here's the example. Suppose I get on an airplane, fly to Costa Rica, fly to another country in which gambling of all sorts is perfectly legal justice. It is in Las Vegas, Atlantic City, other places in the United States. I can make my bets. I can have an agent there bet for me. It's perfectly lawful. There's no reason to believe that Congress has ever tried to or would try to penalize that. Now, I go on the Internet. I go on a website, which is in Costa Rica. Website says you are entering a Costa Rican website. All bets that you choose to make here are placed in Costa Rica. They are received in Costa Rica, and you are bound by Costa Rican law, and you are in exclusive jurisdiction. How could Costa Rica, or a business in Costa Rica, by putting on its website a statement that we deem all bets placed on this website to be made in Costa Rica alter the law of the various jurisdictions and the jurisdiction and power of the United States to say if there's a person in the United States doing something, they're doing it in the United States, whether somebody in Costa Rica wants to say otherwise? Well, that is, Judge Jordan, that is exactly the point that makes this statute vague. Congress has not said that what it wants to do is to make it illegal for anyone in the United States to actually enter into a transaction and knowingly accept that the transaction, the bet will be placed in Costa Rica. What the Internet has done is enabled people who previously would have to get on an airplane to go place that bet to enter into a casino that's located in another country, and not to have the other country say to them, you have to do this, is to say, I want to be in Costa Rica via the Internet. I may want to be in Costa Rica, but if I'm sitting in Delaware and the gambling is illegal, no matter how metaphysical you want to get about it, I'm not in Costa Rica, I'm in Delaware. And I think if I understand the statute, it doesn't say anything except if it's unlawful in the place where you are, and they mean where you are, not where you wish you were, but where you physically are, to be gambling, then this statute allows enforcement through various mechanisms to prevent that behavior. So I guess I'm struggling with what's vague about that. What's vague about saying, hey, you know what, if you're in Philadelphia, you're actually in Philadelphia, you're not in Costa Rica. We, we, I don't think we have it. Though you would like to be. Philadelphia is a quite lovely place to be. Yes, it is. And we know physically. There's a lot of Philadelphia on the panel. We know physically where people. Let me pick up his question and a question that Judge Ambrose asked. It may be difficult to prove where a bet over the Internet was placed or received. But that doesn't make the act unconstitutional, unconstitutionally vague. That's a question of proof, isn't it? Well, the, two issues I think in response. One is, yes, I'd agree with you. The question of whether or not a person can actually determine where a bet's being placed doesn't mean the statute's vague. But there is a portion of the statute which raises a problem, and that is the knowing requirement. The statute. Okay, so you're not claiming that the part of the statute that says if it's illegal where the bet was made or where the bet was received is vague. Is that right? Well, no, I, I didn't, I want to go back to Judge Jordan, in response to Judge Jordan questioned what I was about to say, and it responds to that point. That is, it is not at all clear that Delaware, or any state, can actually regulate foreign commerce, can actually make it a crime for someone to decide to engage in a bet that's not made in Delaware, that is in fact in international commerce. And one of the reasons that this- Well, doesn't that put the wrap in the hat by saying that, by, by declaring that that's a regulation of foreign commerce? According to the, the states, they'd be saying, no, we're outlawing gambling in our state. And the fact that you're in our state, placing a wager makes you a gambler in our state. And it doesn't make any difference where the wires take that bet, you're gambling in our state. Now that, that seems to be the approach Congress has taken, right? They seem to be saying, that's okay with us. Actually not. The, the, and this really is the nub of the vagueness issue, and it, it is exactly, I think, a point you and Judge Ambrose each have made, and the point is this. In use, in ACLU versus Mukasey, Judge Ambrose joined the opinion of the court, basically, and pointed out that Congress stayed away in that statute that was there at issue from trying to make it extraterritorial, because the court explained that the reach of the Internet and the lawful capacity to regulate it was really up in the air. Congress, in this particular statute, has said it's defined unlawful Internet gambling without telling us what it is. Now, Judge Jordan, you're right. The question that you ask is, can I tell you that there's a Supreme Court holding that says Delaware cannot criminally punish a, an, excuse me, an Internet bet that's made in another country by an individual who has voluntarily subjected himself or herself to that country's law? And the answer is, I can't tell you. No one can tell you. Good. Mr. Salzberg, you have carefully avoided, as you, my question, and I'm going to come back to it now. On your vagueness argument, are you claiming that there's anything vague about the statutory language that says if the bet is illegal, where placed, or illegal, where received? And I thought your quick answer was, no, you're not claiming that's vague, but then you went to something else. Are you claiming that's vague? Yeah. In one respect, yes. What respect? If the bettor voluntarily accepts the jurisdiction of Costa Rica by saying, I am placing my bet in Costa Rica. We both agree on that. Much like contracting parties in Delaware say this contract is being made in and subject to the laws of Delaware. But that's a question of proof. It's not a question of statutory language. Is the statutory language vague? The statutory language... It may be difficult to prove where the bet was placed, or it may be difficult to... Let me add, let me just add on to just part of that and part of Judge Jordan's question. When you are in Delaware placing that bet, and the statute says you can't do that in doing so, you know you're in Delaware, right? Yes. It doesn't make any difference that you've agreed that Costa Rican law applies. I think we can all agree that I know whether I'm in Philadelphia or in Delaware most of the time. The question is, do I know whether or not the bet that I'm placing, as a matter of law, not fact and not proof, as a matter of law, is being made in Costa Rican bet. But the statute says that we're telling you for our purposes within our country, it's deemed that it's made in Pennsylvania or Delaware. Statute does not say that. In the definition of unlawful internet gambling, it says in the state or if it has to be illegal in the place that it's made. Where is it made? So then you might have, I suppose, it's conceivable you could have a beef with the law of the various states of the United States, but that doesn't, that's not a vagueness issue in this statute, is it? I'm sorry? This statute says if it's unlawful, as Judge Slover pointed out, if it's unlawful in the place where the bet is made or received, then that's unlawful internet gambling under the statute. That's, what's vague about that? You may, I recognize that you may, it's conceivable that under the law of Nebraska you could say, well I'm just not really sure how that comes out. But as to the, whether or not this statute is vague, how is that vague? It is, it is vague for the reasons that I think have been, I hope, clear in my answers to the panel. Well they're not clear to me. Let me see if I can clarify it we focus on. The question is, how do we... Is the language vague or is the proof difficult? I mean that's, I think we asked that question a while ago. It seems to me that what you're saying is it's going to be a difficult matter of proof. That's not a vagueness issue. It's not a matter, Your Honor, with respect, I would argue it's not a matter of proof. There's no dispute about the internet, better may be in Philadelphia or in Delaware, better places a bet in a casino, enters the casino through the internet, much as he could have, she could have entered by voluntarily physically appearing there. Accepts that this bet is going to be placed by an agent of this person. Let me just, before you sit down, let me ask you this. Good. It seems as if what Mr. Bernstein, who was writing about this before the district court at least, was concerned about was notice. But if this was so important, out of 96 pages of briefing to the district court, I could, we could only find one sentence, repeated on A52 and A55, that says that the act fails to Why is this issue all of a sudden before our court? It seems like it might have been waived in the district court, certainly didn't consider it important, and yet we spent all our time so far on just this issue. Let me give you a candid response to that. I don't think you're wrong factually. It is very clear that in the complaint, paragraphs 49, 50, 63, 64, the notice claim is It is absolutely clear the district court ruled on the notice claim. It's clear, so it's clear it was raised and it was litigated and it was not waived. However, it's equally clear that it was not emphasized in the district court the way in which I have emphasized it this morning. And the reason for that is that our judgment is notice is really the problem, a fundamental problem with this statute. Have you abandoned your First Amendment claims? No, Mr. Bernstein will address those. If he does not, I'll answer any question you have about it on rebuttal. Okay, you're doing Your Honors, to address Judge Ambrose's question on the status of HR 2267, I think you should, for the record, say your name. My name is Eric Bernstein on behalf of the plaintiff, Internet Media, IMAGA. HR 2267 is still sitting in committee. There has been no vote. There has been no action taken. It has been filed and that's where it is, and there seems to be no indication it's moving. In terms of the issue of standing, Judge it is the contention of the plaintiff here, as a trade association, they have the right to bring in action on behalf of entities and potential customers, as well as customers themselves, who believe that they are being prevented from ostensibly being allowed to conduct betting on the Internet. Okay, let me ask what I hope is a precise question. You would agree, right, that Stan requires that we look at what's in the complaint, is that correct? That is correct, Your Honor. And having looked at the complaint, I was unable to see anywhere where there's an assertion that your members' customers are seeking to engage in lawful Internet gambling that will be reached by the Act. That's not an allegation in the complaint. How can that be an argument that's being put before us now? The standing issue, Your Honor, is a combination of both the association and the member businesses, as well as the member customers, by inference. Well, I think he's asking about the customers. Right, I'm not asking about the members. The customers are absolutely a much thinner thread in terms of the issue of standing in the absence of them being specifically named, and obviously no one is going to come forward and indicate they're engaged in illegal betting, and there is no requirement to do so. The courts have ruled. What is there in the record that your association incorporates these customers of the gambling institutions? Because obviously, Your Honor, the businesses who engage in Internet gambling have customers who obtain their services, and therefore they are by nature the customers of the business. Yeah, but what gives you the right to assert a claim on their behalf? We're asserting a right on their behalf through the member businesses who they are the customers of. Well, I'm not... Right, and so the question remains. Well, let me put it this way. In order for us to get to the questions you want us to get to, do we have to agree that you can assert your members' third-party standing for your customers? Yes. In order for us to hit the issues you want to hit, do we have to conclude, oh, they've got the standing to assert not what their members want, but what their members' customers want? I think you can find both, Your Honor. I think you hit it whether you hit the members or the members' customers, both. In this case, all the reliable consultants' case would give that ability to this court. I don't understand that. We have previously defined as close patient, doctor, client, lawyer, customer, vendor, but interactive is not even in that kind of relationship. We would ask the court to take notice, and we've cited the case several times in the Fifth Circuit case, the reliable consultant case, where the Fifth Circuit found that there was a connection relative to not only the members' businesses, but the customers therein who were not. But don't you have a void here? I mean, you allege on 62 of your complaint that the Act impermissibly interferes with the personal privacy and consensual activities of the members of the public who wish to avail themselves of OMEGA's members' services, but you don't allege that OMEGA members are members of the public. I mean, that's why you get Judge Jordan's point, this is once removed or whatever. I'm not so sure it's once removed. I granted the court that it is not the most direct route available, but the inference I think can easily be drawn is that these businesses do not run in a vacuum. They do not run without customers. They are not running businesses without individuals who are obtaining or using the services of the company. Assuming that interactive has standing, what privacy right of individual gamblers is infringed by the Act? It's interesting to note, Your Honor, that the Act does not in and of itself say that bettors are engaged in illegal gambling. In fact, the Act, in fact, does not address the individual. I'm sorry, I don't think that's responsive to the question. The question, you say that there's a privacy right involved. I have the right, Your Honor, in the privacy of my own home, on the privacy of my computer, to engage in activities which are my personal desire to engage in, including the act of gambling. How about if it's unlawful? How about if the state that you're sitting in says you may not wager in this state? If that's the law of the jurisdiction in which you sit, are you asserting that you have a privacy right that trumps the police power of the state to outlaw gambling? No, I do not, Your Honor. What I'm arguing, however, is that I do have the right to engage in the activity where, A, where it's legal, B, where the courts have not rendered or the states have not rendered where it is illegal. What this Act ostensibly does is it trumps the states by saying it doesn't matter whether it is or is not. You can engage in the act. Why does it say that? It says where it's, if it's illegal where sent or illegal where received. Does gambling involve constitutionally protected intimate conduct? We believe it does, Your Honor. You believe it does? Yes. Well, that's a big step. That's a real stretch. I'm not. That'd be making some big law. Your Honor, I'm not suggesting for a moment. I'm not suggesting that this may not necessarily not make big law. May I, for the court frame moment, the Act does not in and of itself render the actions of the individual better illegal. What it prevents is the receiving party, the banks, the payment processors, the credit card companies from transmitting what I want to do to or for them to send the money back to me for bets of which I have maintained. Right. Hits your clients where it hurts, right? Right in the pocketbook. It tells them. Well, actually, if it's. It really helps the clients in the pocketbook. That's another issue. It's saying, it's saying we're not at the congressional level attempting to say whether gambling is lawful or unlawful. We're only saying that if it's unlawful where you place the bet, you can't use the wires to move the money around to do it. That's the sort of bottom line. No, what it says, what it says to the processors is you cannot transmit the money anywhere at any time except for certain exceptions of which I don't know whether the court has decided there is a separate motion to supplement the record relative to the fact that they have prevented lotteries in North Dakota and New Hampshire from processing what is legal under this act because no one knows what an unlawful internet transaction is and the banks have decided and again credit card companies have decided they're going to simply process these all as illegal actions irrespective of where they come from or when. Okay, I think we understand. Your red light's on. Thank you, Your Honor. Mr. Salzberg is going to do the rebuttal. It's a subject of Mr. Salzberg's opinion. May it please the court, Nicholas Begley for the federal defendants. And you're not a law student even though you look like you might be one. Thank you, Your Honor, I think. Yeah. I'd like to start where we started out the last argument which is that plaintiff is here attempting to raise a facial challenge to the Unlawful Internet Gambling Enforcement Act of 2006 and it's very clear that that challenge can proceed if and only if he can demonstrate that the statute is unconstitutionally vague in all of its applications and there are a number of core cases that are indisputably covered by the act. Take a gambling business that opted to establish itself in Utah which outlaws gambling altogether. That gambling business could not knowingly accept an internet transaction without running a file of the act. So I think that by itself disposes of the challenge. Why do you want to press the waiver point here? It's in their complaint and it is in the paragraphs Mr. Salzberg has referred to that they claim there's a notice. And it's addressed by the district court. And it's addressed specifically by the district court. What's the percentage in pushing the waiver? Your Honor, it was addressed by the district court. It's with a word vagueness in two paragraphs of the complaint. It wasn't mentioned in 94 pages of briefing. I think it's anomalous to consider an issue that the district court only considered in passing that wasn't squarely presented. But we're perfectly happy to talk about the vagueness argument on the merits. You know, we're just trying to help the court to avoid constitutional issues that it doesn't need to address. Except on this one you've got the two decisions of our court that basically say if it was addressed even somewhat and the discretion to consider issues that haven't been presented to the district court. But that's true in any waiver situation. The important point here is again the facial challenge can't proceed. As I understood the briefing in the case, plaintiff's argument rests in large measure on the contention that the act is vague because it's incorporation of state law means it varies from state to state. The first, fifth, sixth, seventh, eighth, ninth, tenth circuit. He didn't actually say that before us. Go ahead. I recognize he didn't say it before the court. That's how I understood his argument. But you know, your honors, I'd be happy to answer any questions. No, no. Go ahead. Continue. I didn't. Yeah. You said that you understood it to be the act is vague because the law varies from state to state. That did. That was my understanding of the briefing in this case. And that's clearly not the law. It would call for the invalidation of any federal statute that incorporated state law. Can I ask a question about standing, Mr. Bagley? Sure. Do we have a question? Assume for the sake of argument here, and I'll be wanting to hear from Mr. Salzberg on this too, that we thought that the merits question was actually easier than the standing question. Is this standing issue one that is essentially prudential and therefore one that we could assume standing to get to the merits? Your honor, the rigidity of the rule in Steel Company is such that I think it would be difficult to bypass the standing inquiry altogether. I don't, or I didn't understand the principles of associational standing and third-party standing to be prudential exceptions. I understood those to be a factor of the inquiry into whether there is Article III standing. Far be it for me to put an impediment in the way of this court reaching an easier decision, and I certainly am open to critiquing that. But by analogy, the Supreme Court a year or two ago said that even though you don't have jurisdiction over a case, you can still exercise control over the case under the form of non-convenience provisions to send it elsewhere. So why can't you just for the moment assume you have standing? So SINOCHEM was a threshold issue, which is to say a non-jurisdictional threshold issue, which didn't go to the merits of the case. I understand the merits of this case to be the substantive due process challenge. I'm not sure you can... And the privacy challenge. Right, the privacy challenge, wherever you find it in the Constitution. So I don't, I think that peeking at that portion of the case would be a merits inquiry and not a standing inquiry. But again, far be it for me to stand in the way of this court. Sorry. Under Pennsylvania Psychiatric Society, isn't the third-party standing issue a prudential issue? Maybe I'm just mistaken about that. Your Honor, again, my understanding was to the contrary. But just to speak briefly to the standing issue, Plaintiff here is attempting to, as I understand it, to lump associational standing to say we have associational standing to represent these companies that in turn have customers, and therefore we have third-party standing to represent those customers. And I've never seen a court sort of lump associational standing on top of third-party standing like that. Let me read you something and tell me if I got this wrong. This is out of Pennsylvania Psychiatric. Quote, the restrictions against third-party standing do not stem from the Article 3 case or controversy requirement, but rather from prudential concerns which prevent courts from deciding questions of broad social import where no individual rights would be vindicated, et cetera. I mean, that seems pretty straightforward. Aren't we dealing with prudential issues here when it comes to third-party stuff? Your Honor, I don't recall when the Pennsylvania psychiatric case was decided. It may have been before Steel Company was issued. No, it was 2002. It was in 2002, the Pennsylvania case? It was a case from our circuit. Then I, you know, Your Honor, am simply a little dumbfounded. My understanding is that the question of whether somebody has Article 3 standing, which is to say whether they have suffered an injury sufficient to bring them before a court, was necessarily an Article 3 inquiry. Third-party standing provides an exception to allow a third party to come before the court and step into the shoes. The district court said that Interactive did have standing to pursue at least the First Amendment claim. Isn't that right? They had standing to pursue the claims of their association, of the association's members, which is to say the gambling businesses themselves. But not the third party, but not the customers? That's right. Your Honors, I'd be happy to rest on my briefs at this point. I'd be happy to answer any more questions that you have. I don't want to take any more of the Court's time than necessary. I have no questions. Thank you. Thank you. Do you want me to answer that question, too? I would. I believe it's prudential. Thank you. It sounded like either answer by me on that one was not going to be helpful to us. But let me, if I can return to a point, Judge Dworkin, that you made. Before you get to that, can I just ask you, on Pennsylvania Psychiatric Society, there the Court said prudentially that we could take this up because the individuals involved there are disabled from filing their own claim. What obstacles do individual gamblers here have that prevents them from filing their own claims? Two. Although it's only six states actually make internet gambling unlawful for bettors, those six states, there's an impediment that is you confessing to a crime. And under this federal statute itself, the problem is that although criminal penalties don't appear to reach other individual bettors, civil sanctions, the civil remedy of injunction is not confined to entities. And someone who came forward, the definition of unlawful internet gambling does clearly say you are engaged in unlawful internet gambling if you're betting. And whether or not someone would subject himself or herself to civil— Well, I mean, the individual would say, I'm a gambler. I gamble online in places where it's legal. The state where I live, I cannot gamble because they're telling me it's illegal. I wish to present a constitutional claim about that. Why can't that person do that? The person— The psychiatric seemed to be a case where it was pretty clear that the persons involved who were being allegedly harmed could not bring their own claims. I think that you're— That hypothetical? You're right. The person could bring the claim. Any person who doesn't have to say, I've already bet it, I'd like to, could bring the claim. You're correct about that. I would like to go back to just the one point that Judge Rudin, you raised in the question. And it was this. You're absolutely right when you say the statute makes clear that Congress has said, we're not changing either federal or state law here as to what is illegal. But the question is, where is a bet actually made and where is a bet received? And that's a matter of proof. Judge, I don't believe so. I'll believe it's a matter of law in the end. And the fact of the matter is— Well, whether, I don't know. But it's not vague. Let's put it that way. Are you going back to the vagueness argument? I'm saying it is not only vague, it is impossible because none of the three judges here can answer that question, I don't believe, about where the bet is placed when someone in Delaware gets on her computer and intentionally and voluntarily enters a casino in Macau or Costa Rica and says, I would like to place— But you're asked, aren't you asked to give your location? How does it work? You have a credit card number, and then what else? You have a credit—well, it depends on the internet site. You have to arrange for money. And there are different ways this is done. It's not always a credit card. There are other ways that you can make a deposit. Let's just say, for example, you go on ultimate bet in Costa Rica. How does it work? I don't know ultimate bet on this one, but it may— Well, let's give us an example. OK. Now, I go online. They ask me to identify myself and name and give a credit card or otherwise arrange for instrument to be—to cause a deposit to be made in an account in Costa Rica. So I now have an account in Costa Rica. Essentially, I am authorizing people in Costa Rica to place a bet for me. They place my bet. They receive my bet that if I win, they then would credit my account in Costa Rica. But are you asked on the application, where are you from, or can you get the person's address from the credit card information? Let me answer that, too. You may be asked your address, location. You may be on some—on some websites and not others as to whether or not you can get the credit—they can get the credit card information as to address. That depends on the law of privacy that happens to apply in the jurisdiction that they're in. What is the problem? What is the issue you're illustrating by this? The—the point I want to make, Judge, is that there's no doubt in response to the question Judge Ambrose asked me, there's no doubt that I'm sitting in Delaware, that my computer is in Delaware. Let's assume that—and that—let's assume it's illegal in Delaware. Let's assume that. Okay. So it's illegal under the statute. What's the problem? It's—when you say it's illegal in Delaware— Well, Delaware says no gambling. Well, if Delaware says— That's another case I'm worried about. What most states will say— It's a great state. The great state of Delaware, like most states, generally doesn't say all gambling—all gambling is illegal. Usually it defines specific forms of gambling. It's only for the sake of discussion. Let's take it at—make it state X. State X says you're not gambling here. You're not placing a bet here. Period. And the better says that's fine with me. I'd like to place a bet in Costa Rica. And where we are, Judge, there's no doubt—it's not a question of proof. I know if I go online. I know I'm on the computer. Everyone knows where the bet is officially being recorded. They know where the money is. The money is in an account in Costa Rica. They know— The money, before it goes anywhere, belongs to the person sitting in state X. With his credit card. Whether that person is operating through an intermediary or not is placing a bet. I mean, that, I guess, is the discussion we're going around the track about yet again, which is if you're in state X and you are placing a bet, it doesn't matter, I guess, under the law, in terms of vagueness, whether or not you ask, you know, Mr. So-and-so in Macau or in Costa Rica to do it. That bet is not originating in Costa Rica. It's originating with the person on the computer sitting in state X who says, place the bet. What's vague about that? I guess, you know, you've answered the question, so I just wanted to answer it. Your red light is on. I have one question to ask you, because I asked it to Mr. Bernstein, and I got an answer, and I want to make sure yours is the same. Does gambling involve constitutionally protected intimate conduct? We argue in our brief that it does. All right. Great duck. I love it. Thank you. We'll take this matter under advisement.